

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

**ENTERED**
**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____

Signed May 14, 2008                                                            **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| In re: § | |
| § | Case No. 08-40272-DML-13 |
| RICK BEARD, § | |
| § | Chapter 13 Case |
| Debtor. § | |

### MEMORANDUM ORDER

Before the court is Homecomings Financial, LLC and JP Morgan Chase Bank, as Trustee's [sic] Motion for Sanctions and for Order of Permanent Injunction Against Further Proliferation of Litigation (the "Motion") filed by Homecomings Financial, LLC and JP Morgan Chase Bank (together referred to herein as "Chase"). By the Motion Chase seeks (1) a prefiling injunction preventing Rick Beard, Debtor in this chapter 13 case ("Beard"), from commencing litigation to harass Chase or impede it from exercising its rights to recover possession of Beard's residence, collateral for a loan by Chase to Beard, and (2) sanctions against Beard. The Motion

Memorandum Order – Page 1

initially came on for hearing on March 12, 2006, but Beard did not appear. Because of the relief sought in the Motion,[1] the court concluded that a full hearing on the Motion would require Beard's participation, and the court therefore entered an order directing Beard to appear. Eventually, on April 3, 2008, with Beard present, the court conducted a hearing at which exhibits were introduced by Chase and Beard gave testimony.[2] Following the hearing, at the court's invitation, Beard submitted exhibits as well, with which the court supplemented the record.[3]

---

[1] It appears from Fed. R. Bankr. P. 7001(7) that the Motion should have been filed as an adversary proceeding. Given the court's efforts to ensure that Beard had a full opportunity to be heard, the court concludes that its consideration of the Motion, together with its disposition of the Motion, has afforded Beard due process. *See In re Briggs*, 143 B.R. 438, 462 (Bankr. E.D. Mich. 1992); *In re Irby*, 321 B.R. 468, 470 (Bankr. N.D. Ohio 2005); 10 Collier on Bankruptcy ¶ 7001.01 (15th ed. rev. 2007).

[2] Beard's dispute with Chase has its roots in the November 2005 foreclosure by Chase on Beard's home. Beard claims that the foreclosure was in violation of the stay of 11 U.S.C. § 362(a), in place by reason of his then-pending chapter 13 case, *In re Rick Beard*, Case No. 05-41427-RFN (the "Prior Case"). During his testimony on April 3, 2008, Beard repeatedly stated that he had filed the suits and other documents referred to in the court's proposed findings of fact solely in an effort to bring some court to consider the merits of this claim.

Although the question of whether the foreclosure was in violation of the stay of section 362(a) has not been properly posed to the court, Chase's entitlement to obtain possession of Beard's residence would be affected if the foreclosure was in violation of the stay, since the foreclosure would then be void or voidable. 3 Collier on Bankruptcy ¶ 362.11[1] (15th ed. rev. 2006). Moreover, whether Chase comes before the court with clean hands is of some relevance to disposition of the Motion. The court therefore has reviewed the record in the Prior Case.

The Prior Case was filed on February 9, 2005. On May 4, 2005, Chase filed its motion for relief from stay. On June 9, 2005, the court entered an Agreed Order Modifying Automatic Stay (the "Agreed Order"). The Agreed Order was approved by Chase's counsel and reflects that it was signed on Beard's behalf "by written permission."

The Agreed Order provides, in part:

> Default. If Debtor [Beard] defaults on any of the . . . terms of this Order, [Chase] shall mail notice of the default to Debtor . . . by regular mail. If debtor [sic] fails to cure any default within ten (10) days of the date [Chase] mails such notice, the Automatic Stay of 11 U.S.C. § 362 shall be and is hereby ORDERED terminated with respect to [Chase]. Debtor shall be entitled to one (1) such notice. Upon the second default . . . the Automatic Stay . . . shall terminate as to [Chase] without further notice or action by the Court.

On October 3, 2005, Chase filed its Certificate of Default and Notice of Termination of Stay (the "Certificate"). In the Certificate Chase averred that Beard had "failed to cure post-petition regular monthly and additional monthly installments as required by the Agreed Order." The Certificate goes on to state that Beard was notified of his default by letter of September 15, 2005, and given until September 26, 2005, to cure the default and that he "failed to timely cure the default."

Memorandum Order – Page 2

The Motion is clearly within the grant of jurisdiction of 28 U.S.C. § 1334(b), in that the dispute is related to Beard's chapter 13 case. However, the Motion does not fall within any of the categories of core proceedings set out in 28 U.S.C. § 157(b)(2). Thus, the court may address the Motion only as permitted by 28 U.S.C. § 157(c), which provides:

> (c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.
>
> (2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

Because Beard has not consented to the bankruptcy court entering "appropriate orders and judgments" respecting the Motion,[4] it appears that the proper role of the court in this matter is described by section 157(c)(1).

---

On October 7, 2005, Beard filed a response to the Certificate in which he alleged that he had not "really agreed to" the Agreed Order. However, it appears that Beard was aware of the Agreed Order and he did not deny receiving the notice of default. Further, Beard did not obtain a hearing concerning the Certificate and his response to the Certificate prior to Chase's foreclosure. *See* docket entries #39, 52-53 in *In re Beard*, No. 05-41427-RFN-13 (Bankr. N.D. Tex. filed Feb. 9, 2005). On June 16, 2006, the court executed its Default Order Confirming Termination of Stay, confirming that "the automatic stay was terminated on October 3, 2005, as to the real property known as 3152 Heritage Lane, Fort Worth, Texas 76140 . . . ."

The record discussed above does not support Beard's contention that Chase's foreclosure violated the automatic stay in the Prior Case. Accordingly, the court concludes Chase comes before it with clean hands and may be entitled to the relief sought in the Motion.

[3] The court also offered Chase the opportunity to object to any exhibit submitted by Beard. Chase did not make the court aware of any such objection. Chase, however, has informed court staff that Beard's exhibits were not served upon Chase. As Beard's exhibits are largely duplicative or cumulative of Chase's exhibits, the court will treat them for bankruptcy court purposes as being part of the record.

[4] Although, as a voluntary debtor under chapter 13, Beard might seem to have submitted to bankruptcy court jurisdiction for all purposes, the case law makes clear that exercise by this court of jurisdiction under section 157(c)(2) would require a more explicit consent than the mere commencement as a debtor of a

Memorandum Order – Page 3

Moreover, the court seriously doubts that a bankruptcy court is able to grant a prefiling injunction that would provide Chase with any meaningful relief. The Court of Appeals for the Fifth Circuit recently considered the authority of a *district* court to enter a prefiling injunction. *See Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181 (5th Cir. 2008), in which the Court followed the Tenth Circuit's decision in *Sieverding v. Colo. Bar Ass'n*, 469 F.3d 1340 (10th Cir. 2006).

In *Blue Moon*, the Fifth Circuit held that a district court's prefiling injunction could not extend to state courts, federal courts outside the ruling court's circuit or higher (appellate) courts. Although, as a unit of the District Court for the Northern District of Texas (*see* 28 U.S.C. §151), this court might arguably be able to exercise the same jurisdiction to enter a prefiling injunction as could a district judge,[5] it is at least equally likely that a bankruptcy court would be considered under *Blue Moon*, vis-à-vis district courts, an inferior court. Because the conduct by Beard of which Chase complains includes filing suits in district courts, and because, under *Blue Moon*, this court arguably may not enjoin any such filings, the court concludes it could not grant the relief sought by the Motion[6] even if Beard had consented to its exercise of jurisdiction within the meaning of 28 U.S.C. § 157(c)(2).

For the foregoing reasons, the court concludes that judgment respecting the Motion must be entered by the District Court. Accordingly, the court directs that its clerk assemble (1) the

---

bankruptcy case. *See In re Jensen*, 946 F.2d 369 (5th Cir. 1991) (holding debtors did not waive their right to a jury trial, as to prepetition claims against third parties, by filing a petition in bankruptcy).

[5] Whether the District Court can fashion relief responsive to the Motion is also questionable, given that Beard (as reflected in the proposed findings entered by the court contemporaneously with this Memorandum Order) has commenced litigation against Chase in courts in other circuits.

[6] The court has some concern as to whether under the rationale of *Blue Moon* its authority to enter a prefiling injunction would each extend to limiting filings in bankruptcy courts outside the Northern District of Texas.

Memorandum Order – Page 4

Motion; (2) the transcript of the April 3, 2008 hearing; (3) the exhibits offered by Chase; and (4) the exhibits submitted by Beard, and, together with the court's proposed findings of fact and conclusions of law, entered contemporaneously herewith, transmit same to the United States District Court for the Northern District of Texas.

    It is so ORDERED.

# # # END OF ORDER # # #

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | CASE NO. 08-40272-13-DML |
| RICK BEARD, | § | |
| | § | CHAPTER 13 CASE |
| DEBTOR. | § | |

**BANKRUPTCY COURT'S**
**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

### I. Proposed Findings of Fact

1. Starting in November 2005, Rick Beard, the debtor in the above-captioned case ("Debtor"), began filing a multitude of lawsuits and bankruptcy cases and numerous appeals in various courts all over the country with the purpose of hindering the efforts of Homecomings Financial, LLC ("Homecomings") and JP Morgan Chase Bank ("Chase" and, together with Homecomings, "Movants") to evict Debtor from his former homestead at 3152 Heritage Lane, Fort Worth, Texas 76140 (the "Property").

*A. Debtor's First Bankruptcy Case*

2. On February 9, 2005, Debtor filed a petition seeking relief under chapter 13 of the Bankruptcy Code (the "Code") in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division. Docket entry # 1.[1]

3. On May 25, 2005, the bankruptcy court dismissed the case for Debtor's failure to pay the filing fees. Docket entry # 25; Movants' Ex. 1.

4. Debtor appealed the court's order dismissing the case two days later on May 27, 2005 (the "First Appeal"). Movants' Ex. 1.

---

[1] Unless otherwise indicated, docket entries will refer to *In re Beard*, No. 05-41427-RFN-13 (Bankr. N.D. Tex. filed Feb. 9, 2005).

Proposed Findings of Fact & Conclusions of Law – Page 1

5. On June 9, 2005, Debtor entered into the Agreed Order Modifying Automatic Stay (the "Agreed Order"),[2] one of the terms of which was that the stay would automatically terminate upon Debtor's default—defined by the Agreed Order as (1) failure to make monthly payments of $1,098.69 on the first day of each month, (2) failure to pay $4,085.74 on or before confirmation of Debtor's Amended Chapter 13 Plan to cure post-petition arrearage, or (3) failure to make all payments without any being returned for insufficient funds—and Debtor's failure to cure any default within ten (10) days of receiving notice of default by mail. Docket entry # 31.

6. On October 3, 2005, Homecomings filed the Certificate of Default and Notice of Termination (the "Certificate of Default") as a consequence of Debtor's failure to make monthly payments, cure post-petition arrearage and cure the default within ten (10) days of receiving the Certificate of Default.[3] Docket entry # 52.

7. On June 16, 2006, at the request of Movants contained in a reply to Debtor's objection to the Certificate of Default (on notice to Debtor), the court entered the Default Order confirming the automatic stay had terminated with respect to the Property as of October 3, 2005. Docket entries # 89 and # 99.

8. On November 9, 2006, the district court dismissed the First Appeal with prejudice to refiling (the "Second Dismissal"). Movants' Ex. 2.

9. On November 20, 2006, Debtor appealed the Second Dismissal to the Fifth Circuit Court of Appeals. However, the Fifth Circuit dismissed the appeal for want of prosecution, as Debtor failed to timely pay the necessary docketing fee. Movants' Ex. 3-4.

***B. Debtor's Lawsuit Filed in the Western District of Texas and Related Appeals***

---

[2] In filings with the court, Debtor states he did not really agree with the Agreed Order, but he does not deny authorizing its signing on his behalf.

[3] Debtor objected to the Certificate of Default.

Proposed Findings of Fact & Conclusions of Law – Page 2

10. On November 14, 2005, Chase, acting in its capacity as trustee, filed its Original Petition for "Forcible [sic] Detainer" to evict Debtor and all other occupants of the Property in the Tarrant County Justice of the Peace Court, Precinct 8, (the "Forcible Detainer"). Movants' Ex. 5.

11. One day before trial, on November 22, 2005, Debtor filed a complaint in the United States District Court for the Western District of Texas, Austin Division, against Homecomings, seeking damages for Homecomings' alleged "illegal attempt to unjustly try to take [Debtor's] home away from him" and alleged violations of the "Federal Housing Discrimination and Contract Laws" (the "First Complaint"). Movants' Ex. 6.

12. On November 28, 2005, Debtor appealed the final judgment of the Justice of the Peace Court granting the Forcible Detainer to the Fort Worth Court of Appeals (the "Third Appeal"). *See Beard v. JP Morgan Chase Bank*, No. 02-05-420-CV (Tex. App.—Fort Worth filed Nov. 28, 2005); Movants' Ex. 9. Debtor also filed a notice of removal of the Forcible Detainer to the United States District Court for the Northern District of Texas. Movants' Ex. 7.

13. As a result, the Forcible Detainer was removed to the United States District Court for the Northern District of Texas, Fort Worth Division, on November 22, 2005. *See* Movants' Exs. 7 and 8.

14. On April 3, 2006, the Forcible Detainer action was remanded back to the Tarrant County Justice of the Peace Court, Precinct 8, (the "First Remand Order"). Movants' Ex. 8.

15. The Third Appeal was dismissed by the Fort Worth Court of Appeals for want of jurisdiction on July 13, 2006. Movants' Ex. 9.

16. On April 11, 2006, Debtor appealed the First Remand Order to the Fifth Circuit Court of Appeals. The Fifth Circuit dismissed the appeal for lack of jurisdiction on August 14, 2006. Movants' Exs. 10 and 11.

### *C. Debtor's First Lawsuit Filed in the District Court for the District of Columbia and Related Appeals*

17. On June 1, 2006, Debtor filed a complaint against Movants and additional defendants in the District Court for the District of Columbia. The complaint was substantially similar to the First Complaint. On September 20, 2006, the district court dismissed the case on the grounds that Debtor's claims had been previously litigated and for improper venue (the "Sixth Dismissal"). Movants' Exs. 12 and 13.

18. Debtor appealed the Sixth Dismissal to the D.C. Circuit Court of Appeals. On April 26, 2007, the court of appeals affirmed the district court's decision and dismissed the appeal. Movants' Ex. 14.

### *D. Debtor's First Lawsuit Filed in the Southern District of Texas and Related Appeals*

19. On September 18, 2006, Debtor again filed a complaint substantially similar to the First Complaint against Movants and additional defendants in the Southern District of Texas, Houston Division. Movants' Ex. 15.

20. On January 11, 2007, the district court transferred the case to the United States District Court for the Northern District of Texas, Dallas Division, which Debtor appealed to the Fifth Circuit Court of Appeals on January 30, 2007 (the "Sixth Appeal"). Movants' Ex. 16.

21. The matter was later reassigned to the Northern District of Texas, Fort Worth Division, where the court dismissed the case for lack of subject matter jurisdiction on April 9, 2007. Movants' Ex. 17.

22. On April 24, 2007, the Fifth Circuit dismissed the Sixth Appeal. Movants' Ex. 19.

Proposed Findings of Fact & Conclusions of Law – Page 4

*E. Debtor's Second Notice of Removal Filed in the Southern District of Texas, Related Appeals and Additional Documents Filed in the Justice of the Peace Court*

23. On December 4, 2006, Debtor filed a notice of removal in the United States District Court for the Southern District of Texas, Houston Division, requesting that the district court remove the Forcible Detainer action pending in the Tarrant County Justice of the Peace Court, Precinct 9. However, the district court remanded the case back to the Tarrant County Justice of the Peace Court, Precinct 8, on January 2, 2007 (the "Second Remand Order"). Movants' Exs. 20 and 21.

24. On January 9, 2007, Debtor filed a Notice of Appeal of the Second Remand Order to the Fifth Circuit Court of Appeals, which the Fifth Circuit dismissed on March 6, 2007 (the "Eleventh Dismissal"). In response to the Eleventh Dismissal, Debtor filed in the Fifth Circuit the Petition for Panel Hearing (the "Petition for Hearing") on March 13, 2007. However, the court denied the Petition for Hearing on April 4, 2007. Movants' Exs. 22-25.

25. Since the Second Remand Order, Debtor has filed additional "legal documents" with the Justice of the Peace Court. For example, in June 2007, Debtor filed documents entitled "Notice of Contract and Notice of Default and Notice of Summary Judgment," "Invoice Billing for the Illegally Sale of One's House with Nihil Decit Non response" and "Notice and Demand for Nihil Dicit Judgement [sic]." Movants' Exs. 26-28.

*F. Debtor's Second Bankruptcy Case*

26. On August 23, 2007, Debtor again filed for chapter 13 bankruptcy. Docket entry #1 in *In re Beard*, No. 07-43606-DML-13 (Bankr. N.D. Tex. filed Aug. 23, 2007).

27. On September 11, 2007, the court entered an order dismissing the case without prejudice, as a result of Debtor's failure to obtain credit counseling. Docket entry # 18, case no. 07-43606.

28. Debtor filed a notice of appeal on September 18, 2007, and the district court subsequently dismissed the appeal on October 10, 2007 for failure to pay the requisite filing fee. Movants' Exs. 29 and 30.

29. Debtor then appealed to the Fifth Circuit on November 28, 2007. The Fifth Circuit dismissed the appeal on January 24, 2007 for want of prosecution and failure to pay the filing fee. Movants' Ex. 31.

### G. Debtor's Second Lawsuit Filed in the District Court for the District of Columbia and Related Appeals

30. On January 11, 2008, Debtor again filed suit (substantially similar to the First Complaint) in the District Court for the District of Columbia against Movants and other defendants alleging that the defendants engaged in fraudulent conduct orchestrated to force him from the Property. Movants' Ex. 32.

31. The court subsequently transferred the case to the Northern District of Texas on January 11, 2008, where the matter is currently pending. Debtor thereafter appealed the transfer on February 8, 2008. Docket entries #1 and 4 in *Beard v. Homecomings Fin. Network*, No. 1:08-CV-00049-UNA (D.D.C. filed Jan. 11, 2008).

### H. Debtor's Third Bankruptcy Case

32. On January 29, 2008, Debtor filed the instant petition for relief under chapter 13 of the Code in this court. Docket entry # 1 in *In re Beard*, No. 08-40272-13-DML (Bankr. N.D. filed Jan. 29, 2008).

33. Movants filed the Homecomings Financial, LLC and JP Morgan Chase Bank, as Trustee's [sic] Motion for Sanctions and Order for Permanent Injunction Against Further Proliferation of Litigation (the "Motion"). By the Motion, Homecomings and Chase seek (1) a prefiling injunction preventing Debtor from commencing litigation to harass Movants or impede

Proposed Findings of Fact & Conclusions of Law – Page 6

them from exercising their rights to recover possession of Beard's residence, collateral for the loan by Movants to Beard and (2) sanctions against Beard. Docket entry # 34, case no. 08-40272.

34. The Motion initially came on for hearing on March 12, 2006, but Debtor did not appear. Because of the relief sought in the Motion, the court concluded that a full hearing on the Motion would require Debtor's participation, and the court therefore entered an order directing Debtor to appear. Docket entry # 48, case no. 08-40272.

35. On April 3, 2008, with Debtor present, the court conducted a hearing at which exhibits were introduced by Movants, and Debtor gave testimony. At the hearing, Debtor testified that he would continue filing pleadings in order to continue residing in the Property. Docket entry # 60, case no. 08-40272; TR p. 48, l. 10. Following the hearing, at the court's invitation, Debtor submitted exhibits as well, with which the court supplemented the record. Docket entry # 60, case no. 08-40272.

*I. Movants' Costs*

36. Movants have incurred substantial costs responding to Debtor's various filings. Docket entry # 60, case no. 08-40272; TR p. 50, ll. 14-20.

**II. Proposed Conclusions of Law**

1. The Motion is subject to bankruptcy jurisdiction pursuant to 28 U.S.C. § 1334(b), in that the dispute is related to Beard's chapter 13 case. The Motion does not fall within any of the categories of core proceedings set out in 28 U.S.C. § 157(b)(2). Thus, the court may only submit proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1).

2. Whether Movants are entitled to relief by way of injunction to prevent commencement of litigation must be determined based on *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181 (5th Cir. 2008). In determining whether it should impose a prefiling injunction to deter vexatious filings, a court must weigh all the relevant circumstances, including the following four factors (1) the party's history of litigation, in particular whether he has filed vexatious, harassing or duplicative lawsuits, (2) whether the party had a good-faith basis for pursuing the litigation, or simply intended to harass, (3) the extent of the burden on the courts and other parties resulting from the party's filings, and (4) the adequacy of alternative sanctions. *Id.* at 189.

3. By filing numerous suits against Movants, three bankruptcies and numerous appeals and by filing other papers, Debtor has demonstrated a pattern of effecting vexatious, abusive and harassing litigation, wasting the Movants' time and money and the scarce resources that the taxpayers entrust to the judiciary.

4. Based on Debtor's vexatious pattern, and based on his testimony that he would continue this pattern, it is likely that, without intervention of the court, Debtor will continue to file frivolous lawsuits, motions, appeals and other legal documents in an attempt to further deter Movants from proceeding with the lawful eviction of Debtor from the Property.

5. The court is therefore warranted in ordering that Debtor and any entity acting on his behalf be enjoined pursuant to Fed. R. Civ. P. 65 from instituting any action or proceeding in any bankruptcy or district court in the Fifth Circuit without the express permission of the enjoining court.

6. In the event Debtor or any entity acting on his behalf violates this injunction in contempt, the court should maintain jurisdiction over such matters.

7.  Grounds exist for sanctions, but such sanctions might be suspended in whole or in part dependent upon Debtors not filing further suits, appeals or other papers, in or out of Fifth Circuit, that would hinder or harass Movants.

Respectfully submitted,

_____
D. Michael Lynn
United States Bankruptcy Judge

Proposed Findings of Fact & Conclusions of Law – Page 9